IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
CIVIL ACTION NO. 5:17-CV-00126-GCM

| | |
|---|---|
| PAUL WILLIAMS, ) | |
| ) | |
|     **Plaintiffs,** ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| OHIO NATIONAL LIFE ASSURANCE ) | |
| COMPANY, | |
| ) | |
|     **Defendants.** ) | |
| ) | |

**THIS MATTER COMES** before this Court on Defendant Ohio National Life Assurance Company's ("Defendant") Motion for Summary Judgment. (Doc. No. 22). Plaintiff Paul Williams ("Plaintiff") filed a response (Doc. No. 27) to which Defendant replied. (Doc. No. 32). As such, this matter is ripe for disposition.

## I. FACTUAL BACKGROUND

This case involves an insurance dispute between Plaintiff and Defendant. Plaintiff worked as a dentist for his professional career. (Doc. No. 23, p. 2). Plaintiff owned his own practice and operated under the name Paul H. Williams, DDS, PLLC. (*Id.*). Defendant sold Plaintiff a business overhead expense insurance policy (the "Policy") in 1999. (*Id.*). The Policy provided insurance coverage in the event Plaintiff became disabled. (Doc. 1-1).

    a. **Insurance Policy**

The Policy issued by Defendant provided Plaintiff with insurance for "covered business expenses" in the event of disability. (*Id.*). The Policy described covered business expenses as those expenses that are "normal and customary business expenses that you regularly incur in your business. They are the kind of expenses that the Internal Revenue Code allows as income tax

1

deductions." (*Id.*). In the "Definitions" section of the Policy, covered business expenses are defined as:

> These are normal and customary business expenses regularly incurred by you in your Business. A Covered Business Expense must be of the type that the Internal Revenue Code allows as an income tax deduction. They include but are not limited to:
> (1) Rent;
> (2) Electricity;
> (3) Telephone;
> (4) Mortgage Interest;
> (5) Mortgage Principal or Property Depreciation;
> (6) Equipment Loan Interest;
> (7) Equipment Loan Principal or Equipment Depreciation;
> (8) Other Loan Principal;
> (9) Other Interest Payments;
> (10) Heat and Water;
> (11) Property Taxes;
> (12) Equipment Rental;
> (13) Employees' Wages and Benefits;
> (14) Insurance (Malpractice and E&O);
> (15) Insurance (Fire, Casualty, Liability, etc.
> (16) Business Laundry;
> (17) Equipment Maintenance;
> (18) Subscriptions - Professional Journals;
> (19) Membership Dues -Association;
> (20) Accountants' Fees;
> (21) Legal Fees.

(*Id.* at 8.).

Plaintiff claimed total disability on October 2, 2015. (Doc. No. 23). The Parties do not contest that Plaintiff is in fact disabled.[1] On the same date that Plaintiff claimed disability, Plaintiff sold the assets and goodwill of his dental practice to Dr. Jakub Skowronski ("Buyer"). (*Id.*). At the time of the sale, Plaintiff stopped practicing dentistry. (*Id.*). Plaintiff's business accounts were utilized to process accounts receivables and pay the interest and principal of a business loan that survived the sale of the practice. (*Id.*).

---

[1] In fact, Defendant currently pays Plaintiff under a separate disability income policy.

2

### b. Loans and Sale Arrangement

When Plaintiff sold his dental practice to Buyer, the practice had two outstanding business loans secured by the practice's equipment. (Doc. No. 23-4, 5.). Plaintiff received both loans through Peoples Bank. (*Id.*). One loan had a balance of $129,793.57 ("129 Loan"). The second loan had a balance of $326,762.03 ("327 loan"). (*Id.*). At closing, Buyer wired $129,793.57 to Peoples Bank which identified the beneficiary as the 129 Loan. (Doc. No. 23-13). The loan history shows that money was used to pay off the 129 Loan. (*Id.*). Buyer also wired $326,762.03 to Peoples Bank with the beneficiary as the 327 Loan. (*Id.*). Rather than using those funds to payoff the 327 Loan, Peoples Bank placed those funds in the savings account of the practice. The rest of the proceeds from the sale of the practice were wired into the practice's checking account.

After the sale, Plaintiff opened a new checking account. (Doc. 23-15). Bank records show that a $327,000 withdrawal was made from the practice's savings account that contained the money designated for the 327 Loan. (Doc. No. 23-14, 16). The same day the withdrawal was made, bank records also show a $327,000 deposit into Plaintiff's new checking account. (*Id.*). Subsequently, the practice's savings account was closed. (*Id.*). Plaintiff was the signatory on the new checking account, but he did not have access to it. (Doc. No. 23). Rather, Peoples Bank made the monthly payments on the 327 Loan directly from the account. (*Id.*).

After the sale of the goodwill and assets of the practice, Plaintiff filed a claim under the Policy to cover the payments associated with the 327 Loan. (Doc. No. 23-20). Defendant requested several forms of documentation to support Plaintiff's claim under the Policy. (Doc. No. 23, p. 8). The entirety of Defendant's review process of Plaintiff's claim took at least one full year to complete. (Doc. No. 23-21). After Defendant completed its review, Defendant denied

3

Plaintiff's claim. Plaintiff brought suit in this Court alleging (1) breach of contract, (2) bad faith, and (3) unfair and deceptive trade practices.

## II. STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A fact is material only if it might affect the outcome of the suit under governing law. *Id.*

The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986) (internal citations omitted). Once this initial burden is met, the burden shifts to the nonmoving party, which "must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 322 n.3. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. *Id.* at 324. Instead, "the non-moving party must present sufficient evidence such that 'reasonable jurors could find by a preponderance of the evidence' for the non-movant." *Sylvia Dev. Corp. v. Calvert Cnty., Md.,* 48 F.3d 810, 818 (4th Cir. 1995) (citing *Anderson,* 477 U.S. at 252 (1986)).

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. *Anderson,* 477 U.S. at 255. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita*

*v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). In the end, the question posed by a summary judgment motion is whether the evidence "is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 252.

## III. DISCUSSION

Defendant moved for summary judgment in this case arguing that the Policy as issued did not cover Plaintiff's loan principal or interest payments after the sale of his business as a matter of law. Additionally, Defendant argued that summary judgment is appropriate on both the bad faith and unfair and deceptive trade practices claims. Plaintiff argued that the Policy did in fact cover both the principal and interest payments, and at the very least, a genuine issue of material fact exists on that matter. Additionally, Plaintiff argued a genuine issue of material fact still exists as to the bad faith and unfair and deceptive trade practices claims.

### a. Breach of Contract

#### 1. Policy Ambiguity

First, Defendant argued that the unambiguous language of the Policy did not cover the loan principal or interest payments. North Carolina law controls this case. *Danby of N. Am., Inc. v. Travelers Ins. Co.,* 2002 WL 75841 at *2 (4th Cir. 2002) (North Carolina's choice-of-law principles provide that "[t]he law of the place where the contract was made . . . controls its interpretation."). Under North Carolina law, an insurance policy is a contract. *Lambe Realty Investment v. Allstate Ins. Co.*, 137 N.C. App. 1, 5 (2000). When construing a contract, the goal of the Court is to reach the intent of the parties at the time of issuance. *Id.* If the Court finds the contract language ambiguous, the Court is to construe the language in favor of the insured. *Brown v. Lumbermens Mut. Casualty Co.,* 326 N.C. 387, 391 (1990). This is because insurance companies create the language included in the policy. *Lambe*, 197 N.C. App. at 11.

5

A contract term or phrase is ambiguous if the language is susceptible to two different interpretations. *Id.*; *Woods v. Nationwide Mut. Ins. Co.*, 295 N.C. 500, 506, 246 S.E.2d 773, 777 (1978). "Where a policy defines a term, that definition is to be used. If no definition is given, nontechnical words are to be given their meaning in ordinary speech, unless the context clearly indicates another meaning was intended." *Harford Mut. Ins. Cos. v. Agean, Inc.*, 2011 WL 2295036, at *3 (M.D.N.C. June 8, 2011). If possible, every word of a contract is to be given effect. *Woods*, 295 N.C. at 506. In insurance contracts, ambiguity does not exist unless "in the opinion of the court, the language of the policy is fairly and reasonably susceptible to either of the constructions for which the parties contend." *Wachovia Bank & Trust Co. v. Westchester Fire Ins. Co.*, 276 N.C. 348, 354 (1970).

The Policy defines "Covered Business Expense" as "normal and customary business expenses regularly incurred by you in your Business. A Covered Business Expense must be of the type that the U.S. Internal Revenue Code allows as an income tax deduction." (Doc. No. 1-1, p.8). The Policy goes on in the next sentence to read "[t]hey include but are not limited to: . . .." (*Id.*) The list that follows the "include but are not limited to" language includes several different types of loan principal and interest. (*Id.*). Importantly, of the items listed after the above cited language, the items are not always tax deductible. The Defendant in his own brief stated "[d]epending on the facts, each of the above expenses could be tax deductible or non-tax deductible. . .." (Doc. No. 23, p. 12).

The question before the Court as to Defendant's first argument is whether the language defining "Covered Business Expense" is ambiguous. As described in the applicable case law, the question asks whether the language is susceptible to two reasonable interpretations. The Court finds that it is. On the one hand, the language states that a Covered Business Expense "must be

of the type that the U.S. Internal Revenue Code allows as an income tax deduction." If that were the only language on the subject, the Policy would indeed be unambiguous. That language clearly seems to require federal income tax deductibility in order for the expense to be covered.

The very next sentence, however, states that the definition of a Covered Business Expense "include[s] but [is] not limited to: . . . 4) Mortgage Interest; 5) Mortgage Principal or Property; 6) Equipment Loan Interest; 7) Equipment Loan Principal; 8) Other Loan Principal; 9) Other Interest Payments. . .." This language seems to clearly state that any of those items would be covered under the Policy. This sentence does not, as argued by the Defendant, contain any language that makes the provision dependent on or subject to the previous sentence. Rather, the provision affirmatively says that Covered Business Expenses "*include* but are not limited to." (emphasis added). A reasonable reading of that language would lead an insured to believe that items on that list are covered regardless of their tax deductibility.

As such, the Court finds that the Policy is ambiguous as it relates to the definition of Covered Business Expense. On the one hand, the Policy seems to require deductibility in order for the item to be covered. On the other hand, the Policy unequivocally states that the items listed are covered. Therefore, the Court finds the Policy is ambiguous and must be construed in favor of the insured.

Next, Defendant's brief discussed the applicability of the genuine indebtedness doctrine and the effects of that doctrine on the tax deductibility of Plaintiff's 327 Loan interest in this case. Because the Court has found that tax deductibility is not required under the Policy in order to be covered, the Court need not reach the merits of whether this particular loan would qualify as a tax deduction.

### 2. Liability of Insurer After Insured Sold Goodwill and Assets of the Practice

Next, Defendant argues that even if the loan principal and interest were Covered Business Expenses prior to the sale of the practice, the principal and interest did not qualify after the sale. Defendant argues that once Plaintiff sold the practice, Plaintiff could no longer regularly incur expenses in his business. To this end, Defendant relies on several cases from outside of the Fourth Circuit for the proposition that once an insured sells his or her business, the insured can no longer incur regular business expenses under a business overhead policy. *See Wilson v. Monarch Life Ins. Co.*, 971 F.2d 312, 313 (9th Cir. 1992); *see, e.g.*, *Twin Tiers Eye Care Associates, P.C. v. First Unum Life Ins. Co.*, 270 A.D.2d 918, 918 (2000); *Richardson v. Guardian Life Ins. Co.*, 161 Or.App. 615, 984 P.2d 917 (1999); *Paul Revere Life Ins. Co. v. Klock*, 169 So.2d 493 (Fla. Dist. Ct. App. 1964); *Chenvert v. Paul Revere Life Ins. Co.*, 2004 WL 1739718 (D. Del. Aug. 2, 2004); *Principal Mut. Life Ins. Co. v. Toranto*, 1997 WL 279751 (N.D. Tex. May 15, 1997), *reconsidered in part on other grounds,* 1997 WL 361872 (N.D. Tex. Jun. 23, 1997).

Words and phrases contained within contracts must be given effect, if possible. *Woods*, 295 N.C. at 506. As such, the language contained within a contract controls. In this case, Defendant argues that the above cited cases stand for the proposition that once a business is sold or no longer in active practice, the insured cannot incur regular business expenses under a business overhead policy. As Defendant notes, in each of the above cited cases, the courts found that the language contained within the policies at issue prevented the insured from recovering. However, in each of those cases, the policy language differed in an important way from the Policy language found in this case. Each of the policies from the cases above had language that required a continuation of the business in order to qualify as a covered business expense. *See Wilson*, 971 F.2d at 313 ("the usual overhead expenses you have in *running* your office or

business."); *Twin Tiers Eye Care Associates, P.C.* 270 A.D.2d at 918 (in the "*operation*" of the office); *Richardson*, 161 Or.App. at 617 ("which you normally incur in the *conduct* of your business"); *Paul Revere Life Ins. Co.*, 169 So.2d at 494 ("in the *conduct* and *operation* of the Insured's office"); *Toranto*, 1997 WL 279751 at *5 ("in the *operation* of [his] business") (emphasis added in all).

Each of the cases cited by the Defendant dealt with policy language that required some sort of continuation of the business. Whether it was operation, running, or conduct, each of those verbs have a present, active component. Language such as that does not appear in the Policy before this Court. As such, the Court finds each of those cases largely unpersuasive as they dealt with materially different policy language. Plaintiff represented to the Court that the Policy language at issue in this case has never been ruled on by this Court or any other. The Court did an independent review of the case law and likewise did not find a case directly on point. As such, the Court is left to determine the meaning of this Policy without reference to any controlling case law and very sparse persuasive authority.

The Policy defines Covered Business Expense as "normal and customary business expenses regularly incurred by you in your Business." Business is defined in the Policy as "[y]our occupation, business or profession when a Total Disability starts." (Doc. No. 1-1, p. 8). Plaintiff's occupation and profession was that of a dentist at the time the disability started. However, Plaintiff's business was Paul Williams DDS PLLC. That business was the debtor on the 327 Loan. The business incurred the debt on that loan prior to the disability. The debtor maintained the obligation for the debt on that loan expressly through the sales agreement. (Doc. No. 23-1, p. 4).

9

Thus, the question before this Court is whether the 327 Loan principal and interest remained covered under the Policy after the sale of assets and goodwill of the practice. To make this decision, the Court must look at the Policy language. First, the 327 Loan was normal, customary, and regular in the course of Plaintiff's business. There is no evidence on the record that Plaintiff took out the 327 Loan for nefarious or hidden reasons. Second, Plaintiff incurred the debt through his business prior to the start of the disability as the Policy definition requires. The Court finds those are the only elements the Policy requires before the expense becomes covered under the Policy. While Defendant argued strenuously in brief that once Plaintiff was no longer in business he could no longer incur expenses, the Policy as written by the Defendant states otherwise. Defendant could have inserted a clause requiring some continuous act as described in the cases it cited. Defendant chose not to do so. The Court will not retroactively insert that language in for Defendant at this stage.

Thus, the Court finds that the 327 Loan principal and interest payments are covered by the Policy. At best for Defendant, the Policy is ambiguous on the issue. When a Policy is ambiguous, the Court must construe the language in favor of the insured. Thus, the Court would reach the same result. Therefore, the Court **DENIES** Defendant's Motion for Summary Judgment as to the breach of contract claim.

    b. **Bad Faith**

In the context of insurance, a claim of bad faith requires the plaintiff to "prove refusal to pay after recognition of a valid claim, bad faith, and aggravated or outrageous conduct." *Blis Day Spa, LLC v. The Hartford Ins. Group*, 427 F.Supp.2d 621, 631 (W.D.N.C. Apr. 11, 2006) (citing *Topsail Reef Homeowners Ass'n v. Zurich Specialties London, Ltd.,* 2001 WL 565317 (4th Cir. May 25, 2001) (further internal citations omitted)). Bad faith is defined as not based on a

"legitimate, honest disagreement as to the validity of the claim. Aggravated conduct is defined to include fraud, malice, gross negligence, insult ... willfully, or under circumstances of rudeness or oppression, or in a manner which evinces a reckless and wanton disregard of the plaintiff's rights." *Id.* (internal citations and quotations omitted).

In this case, there is no dispute that Defendant failed to pay Plaintiff under the insurance policy. The question then becomes was that refusal the result of a legitimate, honest disagreement as to policy coverage or was it the result of bad faith on the part of the Defendant. Defendant argues that Defendant never recognized Plaintiff's claim as valid up until the point that it denied the claim. Defendant asserts that the delay from the time Plaintiff submitted the claim until the time the claim was denied was the result of Plaintiff's unwillingness to submit the required documentation. Plaintiff argues that if Defendant truly believed that the sale of the goodwill and assets extinguished coverage under the Policy as argued in its brief to the Court, Defendant should have been able to deny Plaintiff's claim in weeks rather than months.

On these facts, the Court finds summary judgment is appropriate. The Plaintiff has failed to establish a genuine issue of material fact on all three required elements. First, Plaintiff failed to provide any evidence that Defendant recognized the validity of the claim and refused to pay after that recognition. Rather, the evidence on record supports the proposition that the Parties failed to agree on whether the loan principal and interest were required to be tax deductible in order to be covered. There is absolutely no evidence before this Court that would suggest Defendant recognized the claim as valid but chose to not pay. As such, the refusal to pay resulted from an honest disagreement which defeats Plaintiff's bad faith claim.

Even if there was evidence to support the proposition that Defendant recognized the claim as valid and refused to pay, Plaintiff failed to provide evidence of aggravated conduct. The

evidence of record does not support the proposition that Defendant acted fraudulently, maliciously, grossly negligent, in an insulting manner, or under "circumstances of rudeness or oppression." *Topsail*, 2001 WL 565317 at *9. Rather, the evidence before this Court shows that Plaintiff's claim was reasonably in dispute. As such, Defendant's Motion for Summary Judgment as to the bad faith claim is **GRANTED**.

    **c. Unfair and Deceptive Trade Practices**

To establish a claim of unfair and deceptive trade practices in violation of Chapter 75 of the North Carolina General Statutes ("UDTPA"), a plaintiff must prove the existence of: (1) an unfair or deceptive act or practice, or unfair method of competition, (2) in or affecting commerce, and (3) which proximately caused actual injury to the plaintiff or his business." *Murray v. Nationwide Mut. Ins. Co.*, 472 S.E.2d 358, 362 (N.C. App. 1996) (internal citations omitted). The Court must determine as a matter of law whether a particular act or practice is unfair or deceptive. *Blis Day Spa, LLC v. Harford Ins. Group*, 427 F.Supp.2d 621, 634 (W.D.N.C. April 11, 2006) (citing *Ellis v. Northern Star Co.,* 388 S.E.2d 127, 131 (N.C.1990). The North Carolina Supreme Court has held that an insurance company violates the UDTPA by not "attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear." *Id.* (citing N.C. Gen. Stat. § 58–63–15(11)(f) (other internal citations omitted). North Carolina General Statute Section 58-63-15(11)(e) also makes it an unfair and deceptive trade practice for insurance companies to "[f]ail[] to affirm or deny coverage of claims within a reasonable time after proof-of-loss statements have been completed

As discussed above, liability on Plaintiff's claim never became reasonably clear. The Parties disputed liability under the Policy up through and including the current Motion before the

Court. Having read the Policy, the briefs, and reviewed the entirety of the record, the Court finds that Plaintiff's claims remained reasonably in dispute throughout the review period conducted by Defendant. No evidence on the record provides otherwise. Therefore, the Court finds as a matter of law that Defendant did not engage in any unfair or deceptive acts in violation of the statute. As such, Defendant is entitled to summary judgment on the unfair and deceptive trade practices claim.

## IV. CONCLUSION

For the aforementioned reasons, Defendant's Motion for Summary Judgment is **DENIED IN PART** and **GRANTED IN PART**. Defendant's Motion for Summary Judgment is **DENIED** as to the breach of contract claim. Defendant's Motion for Summary Judgment is **GRANTED** as to the bad faith and unfair and deceptive trade practices claims.

**SO ORDERED**.

Signed: January 30, 2019

Graham C. Mullen
United States District Judge